**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SENECA RIDGE MANAGEMENT, LLC,

Plaintiff,

v.

CHILDREN'S CHOICE LEARNING CENTERS, INC.,

Defendant.

2:12-CV-491 JCM (CWH)

**ORDER**

Presently before the court is defendant Children's Choice Learning Centers, Inc.'s motion to dismiss. (Doc. #10). Plaintiff Seneca Ridge Management has filed an opposition (doc. #12), to which defendant has responded (doc. #13).

**Factual Background**

The complaint alleges that, in January, 2006, Christopher Goodwin, chairman of the board of directors of Children's Choice Learning Centers, Inc., approached Albert Lord, a member of Seneca Ridge Management, with an opportunity to invest in Children's Choice. Children's Choice is a company which owns, manages, and controls commercially-run daycare centers at a number of locations around the United States. (Doc. #1).

Plaintiff claims that, in February, 2006, John Drake, also an agent of Children's Choice, provided plaintiff with a prospectus of information relating to the proposed investment. *Id.* The

prospectus allegedly represented that defendant had entered into a new service agreement which would provide defendant with "[n]ew center commitments from . . . 1,900 hospitals. . . ." *Id.* Plaintiff alleges that this purported agreement provided the basis for defendant's further representation in the prospectus that, beginning in 2006, defendant would add 75 new daycare centers over the course of the following five years. *Id.* As of November, 2011, defendant had only added 33 new centers.

Plaintiff alleges that defendant had also represented that it would receive additional income from these centers, specifically predicting that the net income before tax would grow from a $1,899,454 loss in 2006 to a $13,028,594 gain in 2010. *Id.*

Plaintiff alleges that, in order for plaintiff to monitor defendant's performance and to guard its investment, it was agreed that defendant would name Lord to Children's Choice's board of directors and that defendant would schedule regular board meetings, on a monthly basis, unless otherwise determined by the board. *Id.*

Plaintiff entered into four agreements with defendant as of March 24, 2006: (a) an investor's rights agreement, (b) a preferred stock purchase and exchange agreement, (c) a voting agreement, and (d) a co-sale and first refusal agreement. *Id.*

Plaintiff alleges that: the representations made regarding the services agreement, the projected number of new daycare centers to be added beginning in 2006, the projected performance of those centers, and the agreement to hold monthly board of directors meetings were all knowingly false and untrue statements of material fact. *Id.*

Plaintiff acknowledges that Lord was placed on defendant's board of directors. *Id.* However, plaintiff alleges that defendant retained control of the board and prevented it from agreeing to monthly meetings. *Id.* Plaintiff further claims that defendant limited board members' contact with senior management and withheld audited financial statements from the board. Plaintiff finally asserts that, as a consequence of the foregoing, plaintiff was not provided the opportunity to discover the breaches of contract and fraud that had been perpetrated by defendant. *Id.*

Plaintiff's complaint alleges: (1) material breach of contract, (2) breach of contract, and (3) fraud. *Id.* Wherefore plaintiff prays for rescission of contract pursuant to its first three claims,

plaintiff alternatively alleges: (4) breach of contract, and (5) fraud, seeking compensatory damages. *Id.*

**Discussion**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

. . .

*Failure to State a Claim*

In order to establish a claim for breach of contract, plaintiff must allege: (1) the existence of an enforceable agreement between the parties; (2) plaintiff's performance; (3) defendant's unjustified or unexcused failure to perform; and (4) damages resulting from the unjustified or unexcused failure to perform. *See Nevada Contract Services, Inc. v. Squirrel Companies*, 119 Nev. 157, 161 (2003).

Plaintiff's breach of contract claims are premised on defendant's alleged intentional misstatements of material fact in the prospectus. (Doc. #1). Plaintiff asserts that section 2.24 of the purchase and exchange agreement warrants the accuracy of representations made in the prospectus. (Doc. #12). Plaintiff therefore argues that any falsehoods contained in the prospectus amount to breaches of section 2.24. *Id.*

However, the prospectus was furnished to plaintiff in advance of contract formation. If plaintiff's assertions are correct, the contract could not have existed, because the agreement was warranting the accuracy of the fraudulent prospectus. In effect, the contract was premised upon defendant's fraudulent misrepresentations, and, therefore, there was no meeting of the minds. *May v. Anderson*, 121 Nev. 668, 672 (2005) (a meeting of the minds is required in order to form an enforceable contract). Because plaintiff has not established a valid contract, plaintiff's claim for breach of contract must fail. *Saini v. International Game Technology*, 434 F.Supp.2d 913, 919–20 (D. Nev. 2006) (the existence of a valid and enforceable contract is a necessary element for establishing a breach of contract claim).

As explained below, plaintiff's allegations are more properly brought as fraud in the inducement.

*Particularity of the Pleadings*

In order to establish a cause of action for fraudulent inducement, plaintiff must allege: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation was false (or defendant's knowledge that its basis for making the representation was insufficient); (3) defendant's intent to induce plaintiff to consent to the contract's formation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage resulting from such

reliance. *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). To meet this standard, plaintiff must present details regarding the "time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). Plaintiff's complaint must put the defendant on notice of the particular misconduct that defendant is alleged to have committed so that defendant can properly defend against all allegations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003).

Defendant argues that plaintiff's complaint lacks the requisite particularity for stating a claim of fraud. (Doc. #10). Specifically, that plaintiff has not stated the time, place, or content of the alleged fraud. *Id.* However, it is clear from the face of plaintiff's complaint that the fraud is alleged to have taken place between January and March of 2006. (Doc. #1, ¶ 9). The 'place' of the fraud was the contents of the prospectus that was furnished to plaintiff. (Doc. #1, ¶¶ 17, 30). And the content of the fraud was that defendant intentionally overstated the projected expansion of defendant's business for the purpose of inducing plaintiff to invest. (Doc. #1, ¶¶ 17, 32).

Defendant argues that plaintiff has failed to explain the way in which defendant's alleged misrepresentations are false. *See* Doc. #13:7, *citing Arroyo v. Wheat*, 10591 F. Supp. 141, 144 (D. Nev. 1984). However, plaintiff's complaint asserts that "the number of additional day care centers which the Company had represented in its prospectus . . . was overly stated and unreasonably optimistic, and that the projected performance was intentionally overstated." (Doc. #1 at 5:20-23). The complaint further alleges that "[t]he false representations . . . were reasonably calculated to deceive [plaintiff and to induce] it to enter into the Children's Choice Agreements and to invest its $5 Million with Children's Choice." *Id.* Such detail sufficiently explains the manner in which defendant's alleged misrepresentations were false (its projections were overstated). *See Arroyo*, 591 F. Supp. at 144. Accordingly, defendant's motion to dismiss plaintiff's claim of fraud is denied.

*Statute of Limitations*

The applicable statute of limitations for plaintiff's claim of fraud is three years. NRS

James C. Mahan
U.S. District Judge

11.190(3)(d). A cause of action for fraud accrues "upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* Discovery, for the purposes of the accrual of the statute of limitations, means "the statute of limitations will not commence to run until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the [tort]." *Nevada State Bank v. Jamison Family P'ship*, 106 Nev. 792, 800 (1990).When it does not appear from the face of a complaint that a claim is statutorily barred, the issue "becomes a matter of affirmative defense to be pleaded and established by the defendant." *Bank of Nevada v. Friedman*, 82 Nev. 417, 422 (1966).

Here, plaintiff has not declared the precise point in time when it discovered the facts upon which it bases its allegations of fraud. (Doc. #1). However, plaintiff's complaint does not indicate, on its face, that the statute of limitations has run. *Id.* Defendant argues that plaintiff reasonably should have become aware of the facts giving rise to its complaint on, or about, March 24, 2006, when Lord was appointed to defendant's board of directors. (Doc #10). Defendant further contends that plaintiff must have become aware of the allegedly false representations on January 1, 2009, as defendant had only opened 33 of the 41 new centers that were projected to have been opened by the end of 2008. *Id.*

In a case similar to the one at bar, the First Circuit found that a plaintiff's position on a defendant's board of directors, without more, does not establish that the plaintiff is on inquiry notice with regard to acts of fraud perpetrated by the defendant. *Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002). In *Young*, a corporate shareholder brought an action for securities fraud against the officers of a bankrupt issuing company. *Id.* The plaintiff-shareholder was a member of the company's board of directors and had served on the company's audit committee. *Id.* at 7.

In 1997, an independent auditor notified the audit committee that certain deficiencies in the company's internal control structure constituted "reportable conditions" that could adversely affect the accuracy of the company's financial reporting. *Id.* at 5. The district court dismissed plaintiff's complaint on the grounds that it was time-barred, finding that a reasonable director in plaintiff's shoes would have conducted a financial investigation of the company within one year of receiving the 1997 letter. *Id.* at 7.

James C. Mahan
U.S. District Judge

On appeal, the First Circuit noted that the 1997 letter "contained specific reassurances that the reportable conditions did not represent material weaknesses in the company's reporting systems." *Id.* at 11. Furthermore, the auditor had given the company "a clean bill of financial health notwithstanding the contents of the management letters. . . ." *Id.* Accordingly, the First Circuit reversed, finding that plaintiff's position on defendants' board of directors and her receipt of the 1997 letter did not necessarily mean that she reasonably should have known about facts giving rise to her claim for securities fraud. *Id.* at 12. The First Circuit based its decision, in part, on the fact that plaintiff had been assured that there were no irregularities in the company's accounting which might have aroused suspicion. *Id.*

This court finds *Young* persuasive. The First Circuit had applied the "discovery rule," which dictates that a statute of limitations begins to run at the point when plaintiff, "in the exercise of reasonable diligence[,] discovered or should have discovered the fraud of which he complains." *Id.* at 8 (citation omitted). The discovery rule is also the standard used in Nevada. *See Nevada State Bank*, 106 Nev. at 800.

As in *Young*, here, defendant has failed to establish that plaintiff was on inquiry notice. 305 F.3d at 11. In this instance, defendant has not even identified a cause for alarm that should have aroused plaintiff's suspicions akin to the 1997 letter in *Young*. *See id.* at 7. Rather, defendant asserts that plaintiff should have been on inquiry notice from the time that plaintiff joined defendant's board of directors. (Doc. #10).

However, plaintiff contends that defendant had limited the board of directors' meeting schedule, limited the board's contact with senior management, and withheld pertinent information from the board that might have allowed plaintiff the opportunity to discover the facts underlying its claim. (Doc. #12). Accepting plaintiff's allegations as true, it is reasonable to infer that plaintiff would not have been on inquiry notice simply as a consequence of joining defendant's board.

Furthermore, defendant's allegation that plaintiff should have known of the facts underlying its claims on January 1, 2009, on account of the fact that defendant had failed to open its projected number of new centers by that point, is in error. In *Nevada Power Co. v. Monsanto Co.*, the Ninth

**James C. Mahan**
**U.S. District Judge**

Circuit held that, under Nevada law, the question of when an alleged wrongdoing "was or should have been discovered is a question of fact. It may be decided as a matter of law only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct." 955 F.2d 1304 (9th Cir. 1992) (citation omitted).

In that case, plaintiff had purchased electrical generating equipment from defendant which contained polychlorinated biphenyls ("PCBs"). *Id.* at 1304. Plaintiff had discovered within a few years of purchase that there are hazards associated with PCB exposure yet plaintiff failed to bring a lawsuit within three years of that discovery. *Id.* at 1307. Consequently, defendant argued that plaintiff's claims of fraud and failure to warn were statutorily barred. *Id.*

However, the court found that defendant had not met its burden of demonstrating that plaintiff should have discovered the fraudulent conduct upon discovering the dangers of PCBs. *Id.* Plaintiff had assumed that defendant's misrepresentation that the equipment was safe was an innocent error attributable to a general lack of scientific understanding of the effects of PCB exposure. *Id.* Drawing reasonable inferences in favor of the nonmoving plaintiff, the court concluded that, upon discovering the dangers of PCBs, plaintiff had no reason to think that defendant was "any less in the dark about such dangers than the government and scientific community generally were [at the time of the initial sale]." *Id.* at 1308.

Here, it is reasonable to infer that plaintiff would have assumed defendant's failure to materialize its projected expansion was an honest mistake attributable to the vagaries of business growth. Defendant's deficient expansion does not irrefutably demonstrate that plaintiff should have suspected that defendant had intentionally misrepresented its projections at the time that it had furnished them to plaintiff. *See Nevada Power*, 955 F.2d at 1307. Therefore, defendant has not met its burden of establishing that plaintiff's claims are statutorily barred.

. . .

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that defendant's motion to dismiss is GRANTED, as to the breach of contract claim, and DENIED, as to the fraud counts, consistent with the foregoing.

DATED July 26, 2012.

James C. Mahan

**UNITED STATES DISTRICT JUDGE**